UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ASBESTOS ABATEMENT CONTRACTORS, INC. | CIVIL ACTION |
| VERSUS | NO: 11-3118 |
| HOME GUARD ENVIRONMENTAL RESTORATION SERVICES, INC., ET AL. | SECTION: R(5) |

**ORDER AND REASONS**

Defendant Asurety Partners, LLP moves to set aside default and moves to dismiss for lack of subject matter jurisdiction.[1] Plaintiff Asbestos Abatement Contractors, Inc. does not oppose the motion to set aside default, but opposes the motion to dismiss.[2] The Court grants the motion to set aside default and holds that because plaintiff's claim is not based on the general contractor's payment bond, the Court lacks subject matter jurisdiction.

I. BACKGROUND

On March 24, 2011, defendant Jacobs Technology, Inc., the general contractor on a demolition project at the Michould Assembly Facility in New Orleans, Louisiana, subcontracted with

---

[1] R. Doc. 27.

[2] R. Doc. 35.

defendant Home Guard Environmental Restoration Services, Inc. for Home Guard to provide "all labor, equipment, materials, tools, supplies, supervision, and insurance necessary" for the demolition of MAF Building 105 at the Michould Assembly Facility.[3] The subcontract was identified as No. 1075-CY2-MAF-C and stated that it related to Prime Contract No. NNM09AA20C.[4] The same day, Home Guard entered into an oral subcontract with plaintiff Asbestos Abatement Contractors, Inc. ("AAC") for the removal of transite panels from the building to be demolished.[5]

On April 11, 2011, Home Guard posted a payment bond in the penal sum of $517,750.00 with defendant Asurety Partners, LLLP as surety.[6] The payment bond listed Jacobs as the obligee and stated that the it related to Contract No. 1075-CY2-MAF-C.[7] In addition, AAC asserts that Jacobs posted a performance bond with an unknown surety binding themselves to the United States in connection with Contract No. NNM09AA20C.[8]

---

[3] R. Doc. 1 at ¶8; R. Doc. 1-3 at 2 (Jacobs Contract).

[4] R. Doc. 1-3 at 2.

[5] R. Doc. 1 at ¶11.

[6] R. Doc. 35-1 at 1.

[7] *Id.* at 1,3.

[8] R. Doc. 1 at ¶10.

2

AAC began work on May 3, 2011. AAC both removed transite panels and supplied the necessary labor and materials to do so.[9] On June 3, Jacobs notified Home Guard that it was terminating its contract with Home Guard, citing safety violations, compliance issues, and "a general failure for overall project management endangering successful completion of the contract."[10] The letter instructed Home Guard to "expeditiously advise all lower-tier subcontractors" of the termination and to cease work related to the contract immediately.[11] Home Guard notified AAC of the termination on June 6, 2011.[12] AAC asserts that it ceased work immediately upon receiving Home Guard's e-mail.[13] AAC contends that it is owed $33,480.00 for the work, services, equipment, and materials it provided under its contract, and filed this action against Home Guard, Jacobs, Asurety, and XYZ Insurance Company.[14] ACC alleges (1) that Home Guard is liable to AAC for damages caused by Home Guard's breach of contract; (2) that Home Guard and Jacobs are liable to it on open account; (3) that AAC is entitled to payment by Asurety under the Miller Act; and (4) that

---

[9] *Id.* at ¶12.

[10] R. Doc. 1-3 at 6 (Jacobs letter dated June 3, 2011).

[11] *Id.*

[12] R. Doc. 1-3 at 8 (Mitchell e-mail dated June 6, 2011).

[13] R. Doc. 1 at ¶15.

[14] R. Doc. 1 at ¶16.

Home Guard and Jacobs must compensate AAC for the services and equipment it provided under a theory of unjust enrichment. On March 9, 2012, the Court entered an order of default as to Asurety.[15]

Asurety now moves to vacate the default and for dismissal for lack of subject matter jurisdiction.[16] AAC opposes the motion to dismiss, but not the motion to vacate the default.

## II. VACATING DEFAULT

### A. Standard

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). In determining whether good cause exists to set aside an entry of default, the Court considers: whether the default was willful; whether setting it aside would prejudice the adversary; whether a meritorious defense is presented; whether the public interest was implicated; whether there was significant financial loss to the defendant; and whether the defendant acted expeditiously to correct the default. *Jenkins & Gilchrest v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008). The Court need not necessarily consider each of these factors; "the imperative is that they be

---

[15] R. Doc. 17.

[16] R. Doc. 27.

regarded simply as a means of identifying circumstances which warrant the finding of 'good cause.'" *Id.* The wilfulness and meritorious defense factors, however, may be dispositive.

**B.  Discussion**

Having considered Asurety's argument, the Court grants Asurety's motion to set aside default. First, as detailed below, the Court finds that Asurety has presented a meritorious defense. Second, although Asurety waited nearly three weeks to set aside default, this delay does not amount to prejudice to AAC. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000)("mere delay alone does not constitute prejudice"). That AAC does not oppose the motion to set aside default is additional evidence that AAC will not be prejudiced. Accordingly, the Court grants Asurety's motion to set aside default.

**III. MOTION TO DISMISS**

**A.  Standard**

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim. In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint

5

supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Accordingly, the Court may consider matters outside the pleadings, such as testimony and affidavits. *See Garcia*, 104 F.3d at 1261. A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

**B. Discussion**

The Miller Act is designed "to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of public buildings." *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 220 (5th Cir. 2012)(quoting *Water Works Supply Corp. v. George Hyman Constr. Co.*, 131 F.3d 28, 31 (1st Cir. 1997)). *See also United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1553-54 (Fed. Cir. 1983)("the general purpose of the Miller Act is to protect subcontractors against nonpayment, as it is generally recognized that a subcontractor cannot directly sue the government and cannot obtain a lien against property supplied to the government"). The Miller Act provides that:

> Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government [performance and payment] bonds, which become binding when the contract is awarded.

40 U.S.C. § 3131(b). "The performance bond secures the performance of the contract for the benefit of the government, while the payment bond protects persons supplying labor and material in the prosecution of the contract work." Government Contracts: Law, Administration, Procedure (Walter Wilson, Gen. Ed.), Ch. 49A, § 49A.20 (Matthew Bender).

If an entity does not receive payment within 90 days of furnishing labor or material under a contract for which a payment bond is furnished under § 3131, that entity may file a civil action in federal court for the amount unpaid. 40 U.S.C. § 3133(b). The Miller Act provides that:

> (1) In general.--Every person that has furnished labor or material in carrying out work provided for in a contract for which a *payment bond* is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.
>
> (2) Person having direct relationship with contractor.--A person having a direct relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the *payment bond* on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. The action must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. . . . .

40 U.S.C. § 3133(b) (emphasis added). Thus, a "subcontractor's right to sue for recovery under the Miller Act is traditionally limited to a general contractor's payment bond." *Arena*, 669 F.3d at 220 (citing *Superior Sys. Inc. v. Levy Wrecking Co., Inc.*, No. 93-2440, 1994 WL 142113, at *1 (8th Cir. Apr. 22, 1994)(unpublished)). Here, AAC has not sued on a payment bond issued by the general contractor.

8

AAC points out that the subcontractor, Home Guard, posted a payment bond covering its subcontractors with the general contractor and argues that because Home Guard was a subcontractor under the Miller Act, AAC may bring a civil action under that provision.[17] In support, AAC relies on two cases that it contends hold that "a second-tier subcontractor with a contractual relationship with the first-tier subcontractor is covered by the Miller Act." Neither case, however, supports AAC's contention. In *Polied Envtl. Servs., Inc. v. Incor Grp.*, 238 F. Supp. 2d 456 (D. Conn. 2002), the court held that it had subject matter jurisdiction under the Miller Act when the sub-subcontractor sued the sub-contractor and the general contractor pursuant to the payment bond provided for in the *prime* contract. *Id.* at 459. The court expressly reserved the question of whether the plaintiff could sue the subcontractor under the payment bond issued in connection with the subcontract. *Id.* at 458. Likewise, the Tenth Circuit held that a subcontractor's supplier could maintain an action against the general contractor under the Miller Act when the supplier sued on the payment bond between the general contractor and the United States. *Olmsted Elec., Inc. v. Neosho Constr. Co., Inc.*, 599 F.2d 930, 932 (10th Cir. 1979). In sum, neither case addresses the situation at issue here - namely, whether a sub-subcontractor's suit based on a payment bond issued

---

[17] R. Doc. 35 at 2.

in conjunction with the *subcontract*, not the prime contract, falls under the Miller Act.

Rather, the plain language of the statute makes clear that the Miller Act provides a cause of action only on the payment bond between the general contractor and the United States. Section 3131(b) requires a payment bond between a contractor and the government; the right to bring a civil action under section 3133(b) is "on the payment bond" required by section 3131(b). *See* 40 U.S.C. § 3131(b); 40 U.S.C. § 3133(b); *Tri-State Road Boring, Inc. v. United States Fid. & Guar. Co.*, 959 F. Supp. 345, 347 (E.D. La. 1996)(Miller Act contains a "specific requirement that a payment bond be furnished to the United States when the work is a public work"); *Capps v. Fid. & Dep. Co. of Md.*, 875 F. Supp. 803, 808 (M.D. Al. 1995)("By statute, the payment bond must run to the benefit of the United States, and subcontractors and suppliers are permitted to sue on the bond in federal court in the name of the United States."). *See also Gen. Elec. Supply Co. v. United States Fid. & Guar. Co.*, 11 F.3d 577, 579-580 (6th Cir. 1993)("[A] laborer or materialman working on a public building or public work of the United States who has not been paid in full can sue in federal court *on the payment bond required in section* [3131(b)].") (emphasis added)(internal quotations omitted); *Dallas G. Olson v. W.H. Cates Constr. Co., Inc.*, 972 F.2d 987, 989 (8th Cir. 1992) (noting that every person who furnished labor

or material has the right to sue *on the payment bond procured by the general contractor*")(emphasis added).

Further, the Fifth Circuit has made clear that an action under the Miller Act must be instituted on the general contractor's bond. *Arena*, 669 F.3d at 220 (a "subcontractor's right to sue for recovery under the Miller Act is traditionally limited to a general contractor's payment bond"); *J.D. Fields & Co., Inc. v. Gottfried Corp.*, 272 F.3d 692, 696 (5th Cir. 2001)(discussing a right of action against "the general contractor's payment bond" under the Miller Act). *See also Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1493 (10th Cir. 1995)(in order to establish jurisdiction under the Miller Act, plaintiff must demonstrate, *inter alia*, that a payment bond was furnished to the United States); *Superior Systems, Inc.*, 1994 WL 142113, at *1 ("While we have recognized that sub-subcontractors are entitled to recover under the Miller Act, their right to sue has traditionally been limited to suit on the prime contractor's payment bond.") (gathering cases). It is therefore clear that, under the Miller Act, AAC cannot base its action on the bond Asurety issued on the Jacobs/Home Guard subcontract.

Other than the Asurety bond, AAC does not point to any other jurisdictional basis for its action. Although AAC alleges that Jacobs posted a bond for the benefit of the United States, the

bond AAC mentions is a performance bond, which merely guarantees performance of the contract to the United States. In contrast, "[t]he purpose of the payment bond is to protect all persons supplying labor and materials for the completion of the [p]roject." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 557 (9th Cir. 1995). Thus, the existence of a performance bond has no bearing on AAC's purported Miller Act claim. As the party that bears the burden of establishing jurisdiction, AAC fails to establish, let alone plead, the existence of a payment bond between the general contractor and the United States that could provide jurisdiction under the Miller Act. In the absence of a payment bond required by § 3131(b), the Court lacks subject matter jurisdiction to consider AAC's claim. Because AAC asserted the Miller Act as its sole basis for federal jurisdiction, the complaint must be dismissed in its entirety.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Asurety's motion to dismiss and dismisses plaintiff's claim without prejudice.


New Orleans, Louisiana, this 11th day of May, 2012.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE